Good morning, Your Honors. Claudia's service for Appellants Valley Imaging and Dr. Kaiserman. And I would like to reserve three minutes, please, for rebuttal. Insurance coverage is a special subset of the law, usually practiced by a small group of attorneys who have a special love of words. Of a what? Words, because, Your Honor, insurance coverage is all about words. The presence of words, the absence of words. To read an insurance file, this is why attorneys who don't practice law often don't know what to do with us.  in an insurance policy. But the effect of insurance coverage in civil cases is very great. Here the effect has to do with employment practices. We often talk about it as the tail that wags the dog. Okay. How big is the dog? In some cases, especially when you get into environmental cases, for example, very big. The principles that we need to focus on today, and very briefly, because they're detailed in our brief, because this is a duty-to-defend case. Yeah, we get a lot of those. Under California law, that insurance coverage needs to be interpreted broadly so as to afford the greatest possible protection to the insured and that any doubt as to whether the facts trigger a duty-to-defend must be resolved in favor of the insured. And lastly, that once the duty-to-defend arises, it continues until there is a judicial determination. In this case, RLI breached its duty-to-defend, leaving Valley Imaging and Dr. Kaiserman to defend on its own at a cost of over $300,000. There were three main areas which RLI relied upon to deny the duty-to-defend. The first was that Ms. Hernandez was not an employee according to its definition in the policy. And the district court put her finger on the tension between the two. In our view, the decision was wrong, however. Judge Collins said, V.I.P. contends it both controlled her, Ms. Hernandez's work-related activities and paid her salary by reimbursing Queen of the Valerie for the salary it initially paid her. Defendant, on the other hand, contends Ms. Hernandez fell outside the policy's definition of employee because the policy limits employees to only those who receive their salaries or wages directly from V.I.P. The court agrees with defendant. And there's the catch. The court supplied the word directly. The word directly does not appear in the policy. The court gave V.I.P. a gift. The RLI a gift. I wish they'd given V.I.P. the gift. V.I.P. Let me ask you this. Yes. Why was, say, for example, Mrs. Hernandez and the other employees paid by the hospital and then reimbursed by Valley Imaging? Your Honor, it's unclear. Many of the employees at V.I.P. were paid directly by V.I.P. But certain of the employees from about 1990 on were paid through a separate agreement with the hospital. And there is nothing in the record to explain why this was so, and I do not know. But what we do know is that V.I.P. paid all of her salary plus an additional 26% to cover all of her benefits. So at the end of a year, everything that Ms. Hernandez had in her pocket had come from V.I.P. Wait a second. When you talk about the district court supplying the word directly, didn't she get that by interpreting the services agreement and the distinction between part-time personnel and persons working for CVMC that would go and help out with the CT scan services and everything for the other company? I mean, it's Article 1, Section 1.03 talks about direct employment. Yes, Your Honor. But that doesn't change the fact that that does not, you can't import from that to the definition in the RLI policy. Well, we're trying to apply the definition to the facts, and I think the services agreement is relevant to the facts, right? It's the basis for the various employment of the individual people. Yes. And Ms. Hernandez was a full-time employee. She was not a part-time employee. She was full-time. And so I'm sorry, I may be missing something here. No, it's okay. I'm sorry. Continue. Just continue your argument. Okay. I apologize for that. Because what it, to me, appeared to be akin to was, for example, the way we may pay our employees, and many other companies do, through using a payroll service, such as ADP, where the payroll service calls, gets the hours. They make the payments. The check says it comes from them, and then we reimburse the payroll service company two weeks later when we get the bill. If under that definition, our employees would not be our employees under an RLI policy, it seems to me to make no sense. When under all reasonable expectations, they are our employees. It is simply a mechanism we are using, a conduit we are using to have our bills paid. But the money is all passing from us to our employees through a conduit, just as VIP was paying Ms. Fernandez through a conduit. If there was any factual question which needed to be settled, RLI was under a duty to defend until it got a determination, a judicial determination on that issue. Well, Fernandez got annual Christmas bonuses directly from Valley Imaging. Yes, Your Honor. And does that fall within the definition of wages under California law? I would love to argue that it does, Your Honor, but I cannot. And, Your Honor, I am at my time. Why can't you? It is technically not a wage. It is in addition to a wage. Well, Labor Code defines wages to include all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission, basis, or other methods of calculation. And I think we have California cases that have found certain types of bonuses to include wages. And we have this case, Nessendorf v. Levi-Strauss, that tells us that bonuses are considered wages within the meaning of Labor Code section 200. Thank you, Your Honor. Your Honor, I am over my time. It's all right.  It's all right. Thank you. Did Appellant argue below that the bonuses should be treated as compensation? Good morning, Your Honor. No, not to my recollection. And I think here we're interpreting a contract language of an insurance policy  which is, I think, an amount that's awarded as a bonus at Christmas. I guess I pay my newspaper boy a bonus at Christmas. We pay the gentleman in the garage who parks the cars. How much do you give him? Well, I guess it depends how good the service is, how many newspapers I have. That does not convert the paper boy or the gentleman that parks the cars in the garage. You know, she was over there at the hospital, and Valley Imaging reimbursed the hospital that paid her.  Your Honor, I think one of the first things we had in law school was the difference between trespass and trespass on the case and between what was direct and what was indirect. Why should it make any difference here? The money came from Valley Imaging's coffers. Well, Your Honor, as the district court noted first just in thinking through this relationship. Who told Mrs. Hernandez what to do? I mean, whose orders did she follow? And I think for duty to defend purposes, we look at the allegations of the complaint and we look at the information that was available to our ally. And that information indicated repeatedly her allegation that she was paid her wages and salary from Queen of the Valley Hospital. And that Queen of the Valley Hospital then could put in for reimbursement to VIP for her, I believe her term was VIP-related work. But the allegations of the complaint just plainly stated, as well as her DFEH papers, do not come within that policy definition of employee. So the employee definition has, you know, two parts. And I can, I mean, it goes on. But the basic beginning, employee, either in the singular or plural, means any person who receives wages or a salary from the entity, the insured, for work that is directed and controlled by the entity. And then it goes on. I think even if we are to take her allegations that her work was directed or jointly controlled by Valley Imaging and by Queen of the Valley, plainly the first part of the definition, she did not receive wages or salary from Valley Imaging. And so it's just a matter of contract interpretation here. What if Valley Imaging just gave the money to the hospital every week and then the hospital deposited that money, wrote a check, and paid her salary? Well, it's an interesting hypothetical, but those aren't these facts. These facts are she was hired by Queen of the Valley. She was given a Queen of the Valley employee handbook. She was never given a Valley Imaging employee handbook. Benefits. What about the benefits? Are they different at Queen of the Valley as opposed to VIP? There's nothing in the record as to the relative benefits that the VIP employees on site received versus the Queen of the Valley hospital employees who were on site. The service agreement was put in the record that relates to, I think, the standard multiplier on any payment that's being made. Queen of the Valley was paying these employees, and they were Queen of the Valley employees, and that's in the allegations of her complaint. There's really no dispute about that. I believe Dr. Kaiserman put in with his summary judgment papers in 2006 a big stack of invoices where Queen of the Valley had sought reimbursement pursuant to their agreement for various employees, and that's nice. I guess if there were some disagreement between Valley Imaging and Queen of the Valley or Valley Imaging had not paid those submitted invoices, it doesn't change the fact that Ms. Hernandez was a Queen of the Valley employee and had already been paid her wages by Queen of the Valley. This isn't a payroll service. When they submitted the invoice, was it for the exact amount of her wages? There's nothing in the record on that one way or another. There are the detailed invoices, again, put in in 2006 by Dr. Kaiserman, so I question their relevance to the duty to defend issue in 2004-2005. But in any event, even looking at those invoices, they show a list of employees and they show amounts and hours worked. The doctor just, whatever it was, every week gotten information from the hospital as to how much was owed Ms. Hernandez on wages, and he just wrote out a check, walked over there and handed it to her. Where would that put us? Well, if he was getting wages and salaries, she was being paid by Valley Imaging Partners wages and salaries. That's, yeah. Right, but she wasn't. She was being paid by Queen of the Valley, but then later... No, no, he just got the amount from Queen of the Valley, and he wrote out a check, just walked down the hall or wherever it was, and handed it to her as your paycheck for the week. Then I think we would look to the policy definition. Is she an employee? Is she receiving wages or salary from the entity? It sounds like if she's getting a check from Dr. Kaiserman to her, then she is receiving wages and salary from them. What's the difference if Kaiserman hands it to her or hands it to the hospital? Well, the difference is Queen of the Valley is her employer, and Queen of the Valley has hired her, given her the employee handbook there, the ones that pay her and pay her benefits, and then they put in for reimbursement later pursuant to this service agreement. But her pay isn't contingent on whether that later invoice gets honored by VIP or not. She's been paid for her work by her employer, Queen of the Valley Hospital. So she's not receiving wages or salary from Valley Imaging. It's just a contract. Did the insurance company pay for the defense of the claims by Lomeli? Your Honors, or perhaps some of your colleagues, may have the benefit to take a look at that case in about a year. But, yes, there was a Lomeli matter as well. She's a co-plaintiff. As that complaint was originally prepared, she was. Now that got severed off and went through an arbitration procedure instead because that was, I believe, laid out in some of the declarations as well. She's actually directly employed by VIP. That's correct. And that's what's alleged in this complaint. So you stood up to that obligation, your client. Your Honor, there are some other differences between the two cases, which we'd be happy to… You might have had a reservation of rights because it was intentional. There certainly was a reservation of rights. And when a panel of your colleagues gets to look at that case in a year, you'll see that we… It might be us. It may be you. Our reservation of rights was, in fact, upheld, and the district court entered a summary judgment in our favor on duty to indemnify. But I don't want to spend much time here talking about that appeal. I mean, this complaint, you treated… I mean, to your credit, you did, under a reservation of rights, defend the Lomeli, who was the direct employee, but not Hernandez because you do not consider her an employee within the definition. She is not within the definition of an employee under the policy. That's correct. And so that is a key distinction between the two and their claims. I think there were some other distinctions as Ms. Lomeli's claims evolved, but I don't want to get too much into those claims right here. We're looking at Ms. Hernandez. But that's right. I mean, in our view, this is a straightforward application of contract language. Everyone knows what wages and salaries are generally what you receive from your employer. She was paid by Queen of the Valley, not by Valley Imaging, and so she doesn't… I mean, Ms. Hernandez was an employee of Queen of the Valley, and she's over there working at VIP, and she's being harassed and subject to this horrible, hostile environment. Why should she go back to Queen of the Valley and say, I don't want to go over there anymore? Well, she did. In fact, that's an interesting allegation in the complaint that I think is fully consistent with her being an employee of Queen of the Valley. She, in fact, does allege in her complaint at paragraph 41 of the first amended complaint, and I believe that when she, at ER 396, that when she was feeling pressured and stressed by this hostile atmosphere in the wake of her giving the deposition in Ms. Castillo's case, that she asked to be transferred to a different QOV facility. And obviously, a Valley Imaging employee would have no standing to go ask Queen of the Valley to be transferred to a different Queen of the Valley facility. The reason she could and did make that request is she knew she was a Queen of the Valley employee. Her deposition testimony on this was very clear. She stated under oath in her deposition that she was a full-time employee of Queen of the Valley Hospital. So, in fact, she did and she knew she was an employee of Queen of the Valley Hospital. And whether or not, under common law or statutory theories, she can allege sufficient standing to assert these employment torts and to be an employee within the meaning of these torts isn't the question. The question is whether she satisfies the definition of employee under our coverage grant of our insurance policy, and that she plainly does not. And there was a brief mention, and I know I've been responding to questions, and I see that my time is up, so with Your Honor's indulgence, on our two alternative arguments, I will simply refer Your Honor to our brief. I think each of them is powerful, independently sufficient ground for affirming the judgment as well. But going back to the question of, I believe the appellant said, when a duty to defend arises it can't be terminated until you get a judicial determination of non-coverage. We say at the threshold no duty to defend ever arose here. There simply was no potential for coverage under this definition, under this policy, as the complaint was tendered to us, as the supporting documentation and information was given to us. Nothing to indicate that she was an employee within that definition, so as to even give rise to a duty to defend in the first instance. So this isn't a question of a carrier defending when can you get out, when have you developed sufficient evidence. There was never a duty to defend that came into existence here because there's no potential for coverage, given she cannot come within the definition of employee. And so that's our address on that. There are a lot of other issues raised in the briefing. I think, you know, Your Honor can certainly feel free to refer to that. I am past my time, so if you want me to stop talking, I'm certainly happy to do so. But there was a point first raised in the reply. We have read all the points. Okay. To repeat. That's fine, Your Honor. Okay, very good. Thank you. Let me ask you this. Wasn't there a potential that VIP would sustain a loss under this policy? Not under this policy. There was certainly a potential VIP could suffer an adverse judgment or verdict in the Hernandez case. No question about that. But the adverse judgment that they would suffer in that case, the defense fees, et cetera, are not within the coverage of our policy because Ms. Hernandez isn't an employee. So certainly there was a potential they could lose that case with Ms. Hernandez. And, you know, I think it ended up settling, was what they said. But that isn't the standard for whether we've. Is there any doubt that Valley Imaging reimbursed the hospital for the work that Ms. Hernandez did? I think it's a. On account of Valley Imaging. I believe Ms. Hernandez' allegation is that, in fact, Valley Imaging reimbursed Queen of the Valley for her VIP-related work. I believe in paragraphs 50 and 94 of the first amended complaint, that's the language she used. So, again, on a duty to defend standard, I'm not going to sit here and tell you I can challenge whether that's true or false. That is the allegation taken as true, that Queen of the Valley paid her, her wages and salaries, and then put in for reimbursement to VIP, which reimbursed her for VIP-related work. And so that's the allegation. I don't know what it's doing now. It's telling me to stop already. Go ahead. Okay. Your Honors, as to the allegations in the Hernandez complaint, just to be clear on this, Ms. Hernandez alleged, and this is what RLI had in their complaint, that she was an individual who worked for Valley Health Partnership, Queen of the Valley Hospital, and Valley Imaging Partnership. So she alleged right in the beginning she worked for both. She also alleged she began working as a receptionist at Valley. Although stationed at the QOV campus site, both VIP and QOV effectively controlled her work, and VIP reimbursed QOV. VIP also treated Hernandez as a VIP employee. This is, I'm quoting out of our statement of facts, as a VIP employee, inviting her, et cetera, and they were joint employers of Hernandez. So this was the information RLI had in the beginning when they denied coverage. There was, under their policy, a factual doubt. And based on the Atlantic Mutual case, which is cited in our brief, they had at that point a duty. If they thought they really had a slam dunk under their policy, given the facts, they could have gone in and gotten a judicial determination, and they wouldn't be in the situation they're in right now. All right? As to the related claims, Your Honor, they need to be held to their definition, not other cases which are not under the same policy language. They need to be held to a specific policy language, and that's in our brief. Okay. I think we got it. We got it? Okay. Thank you, Your Honor. All right. We'll go to Yang v. Fasteners.
judges: Pregerson, Wardlaw, Archer